WINSLOW HINKS *versus* CHARLOTTE HINKS, *Appellant.*

Under the statutes in force in A. D. 1810, relating to roads, it may well be questioned whether the selectmen of towns had authority to do more than lay out roads; and the expression of an opinion in a report of the laying out of a road, that "two bars or gates may be kept up across the road," although the report was accepted by the town, confers upon the owner of the land, no authority thus to encumber the road.

But as a road may be established by user, the rights of the public will be according to the user. *Thus,* where a road had been encumbered for forty years with moveable bars or gates, the right to use the road still existed, subject to such limitation.

And if one passing over the road neglects to replace the bars he removes, he does not thereby become a trespasser; for this is a mere *nonfeasance,* which does not render him a trespasser *ab initio.*

When the right to enter upon the land of another exists, the remedy for an abuse of that right is by an action of the case.

REPORTED by RICE, J.

TRESPASS *quare clausum.* This action was submitted, on a report of the evidence at *Nisi Prius,* to the full Court, with jury powers.

The plaintiff alleges in his writ that the defendant broke and entered his close in Bucksport, on divers days and times between a certain day named, and the date of the writ, and threw down and left down the plaintiff's bars, exposing his field to damage, and subjecting him to loss of time, expense and inconvenience in repairing them, &c.

The action was originally brought before a justice of the peace, from whose judgment the defendant appealed to this Court.

From the report of the evidence, it appears there was evidence tending to show that, for many years, there had been a way or road leading from the county road to the shore of Penobscot river, passing over the plaintiff's land, which way was entered on the south side of the county road, near the plaintiff's barn. At the entrance of the way there had been kept up, except in winter, bars or a gate. The distance from the county road to the shore, where several families live, is

about one hundred rods, though persons live on the road side. The road has been used for hauling wood and lumber over it in winter.

The plaintiff, as highway surveyor, has worked upon and repaired the road.

Some of the persons using the road would neglect to replace the bars they had taken down, of which the plaintiff made no complaint until recently. The defendant resided in the vicinity of the plaintiff, and frequently passed over the road to visit her sister, who lived near the shore.

It appears, from a copy from the records of the town, that, on July 11th, 1810, " the selectmen laid out a road or way, beginning at the county road in front of Winslow Hinks' barn, at a post; thence, [here follow the courses and distances,] to low water mark; the said road to be three rods wide. The selectmen are of opinion that it is unnecessary that said road should be fenced out or kept constantly open, but that one or two gates or bars may be kept across the same. And that, as a compensation for the land of Winslow Hinks, through which the said road runs, he shall enjoy the privilege of the land allowed for a road on the north side of farm, from the county road to the river."

The road thus laid out was accepted by the town, Sept. 29, 1810.

*Woodman*, of counsel for plaintiff, argued,—

That, as the laying out of the road was an invasion of private rights, the report of the selectmen should be construed strictly; matters of doubtful construction should be determined favorably for the land owner.

What is now called a " town way" in our statutes was termed, in the statute in force when this road was laid out, " a particular way for the use of the town." Laws of Mass., vol. 1, p. 371, (Feb. 27, 1787.)

It nowhere appears that there is any limitation or restriction as to the *manner* of laying out, whether open or with bars or gates, and no distinction in the Act is made as to the

manner of laying out, or kind of road to be made, between ways laid out for the use of the town and those for private use.

It will hardly be contended that what we denominate private ways may not be encumbered with bars or gates. Then where is the distinction ?

The laying out and acceptance must not be conditional. *Christ Church* v. *Woodward,* 26 Maine, 172. If the report in this case is to be construed as conditional, then the proceedings are simply void. But if *descriptive* merely, they may be good; but the road must be as described and taken, if at all, with the inconveniences which bars or gates impose; else a gross wrong and even fraud was committed upon the owner of the land. He had a right to insist that the burden of a road over his land should not be imposed upon him without compensation.

He has had such compensation as the selectmen recommended, but only for what they recommended. When compelled to throw open the road, he will receive damage for which he has no redress.

Besides; it is urged that the report of the selectmen, in its *entirety* and in *detail,* is but their *recommendation* to the town. They are its servants, whose duty it is, when applied to, to inquire and ascertain what the town had better do. The town is the ultimate tribunal. It is acting for itself when it "approves and allows" a road for the use of the town. And, when it adopts the recommendation of its servants, it cannot be permitted to say to a citizen that, what the report contains for *our* benefit is all right, but for *yours,* all wrong. It was the report of the selectmen which was accepted.

The evidence shows that the road has always been encumbered with bars or gates. It has been so used for fifty years, about, in accordance with the report of the selectmen and the undoubted understanding of all parties interested. Whatever conclusion the Court may adopt in regard to the recommendation of the selectmen, it is submitted that the plaintiff has by long usage acquired a right to keep up his bars

across the way, and that any easement which the public now has is subject thereto.

Taking the whole matter together, this was a laying out a road with a *limitation*, or a condition, and it results that it is either a road with such condition or no road at all.

It would be severe to say that such condition was no part of the road, and thus mislead the land owner, who takes such qualification to the use of the road as a compensation in lieu of damages.

Privileges may be reserved to owners of land through which a road passes. *Windsor* v. *Field*, 1 Conn., 279.

*Knowles & Tuck,* for defendant.

By the statute of Massachusetts, passed in 1787, the selectmen were empowered to lay out town ways. The authority was general, and, in the manner of exercising it, left them no discretion. The power conferred was identical with the authority of selectmen by our statute. Their duties are prescribed, and the town could not confer any additional authority. They may locate the road, fix the boundaries, estimate damages, &c., and make return of their doings, and there their power ceases. They derive their authority from the statute, and cannot exceed it.

The statute gives them no authority to make conditions, or to impose terms; or to lay out a road provisionally, or to express an opinion. They are to perform positive duties, and to do certain and positive acts. They lay out a road and give courses and distances, making it three rods wide. Having thus performed their duty, they volunteer an opinion not in any way connected with the performance of that duty. Nor is there any thing to indicate that the opinion they express influenced them in any manner in locating the road, or that the town, in accepting the road with such an expression of opinion, intended to sanction or adopt it.

Such a power as is claimed here, even if exercised with the intention of making the laying out conditional, might be the means of great abuse. The inhabitants of one part of a town,

who wished to use such a road commonly, might be subjected to bars and gates, or any other inconveniences, by others who had no use for it. The people of other towns, and the public generally, might be placed in the same situation, and by the mere expression of an opinion by the selectmen. A majority of the voters of a town would thus have the power and right to erect a perpetual nuisance upon a minority and upon the public.

If the plaintiff acquired the right of maintaining bars, it was an easement acquired against the public convenience and would be forfeited by abuse. *Doane* v. *Badger,* 12 Mass., 65 ; *Prescott* v. *White,* 21 Pick., 341.

The defendant would not be liable in trespass, if she used the bars as had been customary by those passing them and acquiesced in by the plaintiff.

The opinion of the Court was drawn up by

APPLETON, J. — This is an action of trespass *quare clausum.* The defendant justifies under a right of way over the premises.

It appears that a road was laid out over the *locus in quo* and accepted in 1810, which has been used by the public ever since. The selectmen, after describing the limits of the road, express an opinion that " two bars or gates may be kept up across the road." This purports only to be the expression of their opinion. It may well be questioned whether they had authority to do more than to lay out the road. If they had, it does not seem that they attempted to do it. If the road is to be regarded as laid out and accepted, and as without gates or bars, the erecting them would be a nuisance and their removal would be justified.

But a road may be established by user. The rights of the public may be more or less extensive according to the user shown. In the present case, the evidence of the plaintiff tends to show a road encumbered with moveable bars or gates, for a long period of time.

But if the right of passage was subject to the limitation of

bars or gates, still the right would exist. The defendant might, if she chose, pass over the premises in dispute. Her right of passage is indisputable. To do this, she must remove the bars; and she would not be liable in trespass for either their removal or her subsequent passage over the plaintiff's land.

Nor does she become a trespasser by omitting to replace the bars. This is a mere *nonfeasance,* which does not make one a trespasser *ab initio.* 8 Coke, 146; *Gardiner* v. *Campbell,* 15 Johns., 401; *Ferrin* v. *Symonds,* 11 N. H., 363. Where the right to enter upon the land of another exists, the abuse of it will not sustain an action of trespass. The remedy is case. *Edelman* v. *Yeakel,* 3 Casey, (Penn.,) 26. So one who has a license in fact to pass and repass over the land of another, and abuses it by leaving a bar-way open, whereby the cattle of others enter and do damage, is not liable in an action of trespass, but only in case, for a breach of his duty to keep the bar-way closed. *Stone* v. *Knapp,* 28 Verm., 502.                    *Plaintiff nonsuit.*

TENNEY, C. J., and CUTTING, MAY, DAVIS, and KENT, J. J., concurred.