WILLIAM R. CATON AND ANOTHER v. JOHN W. MOSELY.

It may be considered as well settled, that every valid assignment to a trustee for the benefit of creditors must declare the uses to which the property assigned is to be applied, and must settle the rights of creditors under it, and not leave to the assignee, or reserve to the assignor himself, the right of subsequently doing so.

An instrument of assignment which recites that the assignor is indebted to "sundry persons," but does not name them, nor specify the amount of the assignor's indebtedness, and provides that the assignee "shall hold said property, and dispose of the same as soon as he can possibly do so to the best advantage, for the benefit of my creditors," does not comply with the foregoing rule, and is therefore invalid.

ERROR from Lamar. Tried below before the Hon. W. S. Todd.

*Johnson & Townes*, for the plaintiffs in error.

*J. A. Murray*, also for the plaintiffs in error.

*W. B. Wright*, for the defendant in error.—In answer to the point made by the counsel for the plaintiff in error, we say it is true that Mosely is a trustee, but he is a trustee for the creditors of Jones, and not for Jones, (see Burrill on Assignments, 325,) consequently the death of Jones did not dissolve the trust.

Again, there is a wide difference between a mortgage or a deed in trust, or rather a mortgage with power to a trustee to sell upon

a certain contingency, and a deed of assignment for the benefit of creditors generally.   One is but a collateral security for the debt; the other is an absolute and complete transfer of all the right, title and interest that the assignor has in and to the property thereby conveyed, and especially where the assignee accepts the trust, and the deed is delivered to him and he takes possession of all the property thereby conveyed, (as fully done in this instance,) then such a deed of assignment is an absolute transfer of all the right, title and interest that the assignor had in and to said property, so conveyed or assigned.   (See Burrill on Assignments, pp. 34 and 321, § 2, also p. 325; Ingram v. Kilpatrick, 6th vol. Iredell's Equity Reports, p. 462.)

On the second point made, the court charged the jury correctly; (see 21 Tex. R., 788, Caton v. Jones,) but plaintiffs in error further contend, in order for the claims to be good and valid claims against Jones, and to be put upon a standing with their claims, it was necessary that the creditors who held said claims should present them, properly authenticated, to the administrator for allowance, and then to the probate judge for approval.   This proposition will not do, because, in the first place, Mosely was representing the creditors directly; the property under an order of the district judge had been sold, and the proceeds, or a part, had been placed in the hands of the clerk of the District Court; he, at the December Term of the court, A. D. 1857, at the very same term of the court that plaintiffs in error obtained their judgment, filed his plea of intervention to litigate with the Catons and the administrator of Jones, as to who should have the property conveyed in the deed of assignment, and then and there obtained a judgment in behalf of the creditors, for the property; thereby rendering their claim through him good and valid.   But it is contended that he or the creditors ought to have presented the deed of assignment to the administrator of Jones, in order that it might be allowed and afterwards approved by the chief justice. Suppose it had been done, and his administrator had allowed it, what then?   He would have been in no better condition than before, as he still would have been compelled to have further litigated the matter, as the administrator of Jones had no control

Caton v. Mosely.

over the property in litigation, but the same was claimed by the Catons, and they endeavoring in the District Court to enforce their lien. But to whom were the creditors of Jones looking for pay? Were they looking to Jones' administrator? Not at all. They were looking to Mosely, as he held the property out of which they expected their claims to be liquidated. Then it would have been the height of folly to require them to present their claims to the administrator of Jones before the assignee, Mosely, could have successfully intervened in the District Court to get charge of the property claimed by the Catons. But it is respectfully suggested that, admit that such a point could be raised, it alone could be raised by the administrators or the wife and children of Jones, provided he had any.

The question of fraud was submitted by the court to the jury, who found there was no fraud.

A deed of assignment for the benefit of creditors generally, is regarded by the law with favor, and construed beneficially for creditors by the courts of the country. (Burrill on Assignments, p. 18, 2d paragraph pp. 6 and 347.)

BELL, J.—The plaintiffs in error commenced this suit by attachment against Christopher C. Jones. The evidence shows that prior to the levy of the attachment of the plaintiffs on his property, Jones had made an assignment of his property, for the benefit of his creditors, to James W. Mosely, the defendant in error. Mosely intervened in the suit between the Catons and Jones, and claimed the property upon which the attachment had been levied, by virtue of the assignment to him. During the pendency of the suit, and before trial, Jones died, and his administrator, Collins, was made a party. The cause proceeded to trial. The plaintiffs obtained judgment against the administrator of Jones for their debt; but the intervenor Mosely obtained judgment upon his petition in intervention, establishing his right to the attached property, by virtue of the assignment to him by Jones. The case was brought into this court, and the judgment of the District Court was reversed, because the intervenor Mosely did not prove that there were any creditors of the estate of Jones,

to receive the benefit of the assignment. On a second trial of the cause, the intervenor Mosely presented to the court certain claims of creditors of Christopher C. Jones, and again recovered judgment for the property which had been attached. It also appears, from the statement of facts, that the plaintiffs, on the last trial of the cause, offered in evidence the judgment which they had recovered at a former term, against the administrator of Jones. But it is to be remarked that that judgment had been reversed by the unqualified judgment of this court, and was not, therefore, a subsisting judgment at the time of the last trial; though it seems to have been treated as such, because, on the last trial, the plaintiffs did not recover judgment against the administrator. It was contended, on the last trial of the cause, by the plaintiffs, that upon the decease of Jones, the assignment to Mosely became *functus officio*, upon the principle of the decision in the case of Robertson v. Paul, (16 Tex., 472,) and this proposition is relied on in this court. Whether or not the principle of the decision in the case of Robertson v. Paul is applicable to assignments in trust for the benefit of creditors, is a question which we do not think it necessary to decide in this case, although it is not supposed to present any difficulty. The question which must dispose of this case relates to the original validity of the assignment itself, and we are of opinion that the assignment is of no validity in law, against creditors of Jones not assenting to it, and gives the intervenor no right of action in the present case. The instrument of assignment recites that the assignor is indebted "to sundry persons," but does not name them; nor does the instrument specify the amount of the assignor's indebtedness. The instrument then recites that the condition of the assignment is that the assignee, Mosely, "shall hold said property, and dispose of the same as soon as he can do so to the best advantage, for the benefit of my creditors generally."

Although courts have sometimes gone very far in giving effect to assignments, even when to do so has operated to the detriment of creditors, it may be considered as well settled, that every valid assignment must declare the uses to which the property assigned is to be applied, and must settle the rights of creditors under it, and not leave to the assignee, or reserve to the assignor himself,

the right of subsequently doing so. (Burrill on Assignments, pp. 235, 236.; Grover v. Wakeman, 11 Wend. Rep., 203, and same case, 4 Paige's Rep., 41; Boardman v. Halliday, 10 Paige, 233; Sheldon v. Dodge, 4 Denio, 217; Gazzam v. Pointz, 4 Ala., 374.) Mr. Burrill, in his work on Assignments, says that schedules of assets and of liabilities should, if possible, be made out and annexed to the instrument of assignment before its execution, but that this is sometimes dispensed with. We have examined the cases with care, and find that courts have gone to the extent of permitting schedules of assets and liabilities to be prepared and annexed to the instrument of assignment after its execution. And it has also been held, that where full schedules were presented to the court, in answer to the suit of a judgment creditor, the presumption of fraud in the original instrument of assignment was repelled, but this was where the transaction bore the evidences of good faith. (See the cases of Rundlett v. Dole, 10 N. Hamp., 458; Stevens v. Bell, 6 Mass., 339; Brashear v. West, 7 Peters, 608; Cunningham v. Freeborn, 1 Edwards Ch. Rep., 264, and the same case in 11 Wendell, 240.) But these rules are to be received with the qualification, that the assignment in its original form is, in other respects, unobjectionable; and that the schedules subsequently annexed conform to the provisions of the body of the instrument. (See the case of Averill v. Loucks, 6 Barbour's Sup. C. Rep., 470.) We have been able to find no case where an assignment in trust for the benefit of creditors, which did not name the creditors, and settle their respective interests in the property assigned, has been sustained by the courts, unless schedules supplying deficiencies of the original instrument were subsequently annexed to the assignment, under circumstances entirely consistent with the idea of good faith in the original act of assignment. The case now under our consideration illustrates the importance of requiring parties who make assignments for the benefit of creditors, to settle the rights of their creditors by the terms of the instrument of assignment; and to do this the creditors must be named, or the instrument must furnish some certain means of ascertaining who are the creditors. In this case the assignor is dead, and can not name the creditors by any supple-

mental instrument or schedule. The creditor is, therefore, at the mercy of the assignee. When a creditor presents his claim against the assignor, the assignee may deny that he is a creditor. The creditor would then be driven to his proceeding at law to establish the fact that he is a creditor; and after establishing this fact, (if there be any method known to the law by which it could be established,) the assignee would still be entitled to retain the property assigned, for the purposes of distribution. Thus the creditor would be driven to his suit to establish his standing as a creditor, whereas the law requires that his standing as a creditor shall be recognized in the instrument of assignment, and his rights under the instrument settled by its terms. It may be asserted to be indispensable to the validity of an assignment in trust for the benefit of creditors, that it does not place the creditor at the mercy of the debtor. As was said in the case of Gazzam v. Pointz, (4th Ala., 374,) "Whilst the debtor retains his property in his hands, subject to the legal pursuit of his creditors, he may compound with them and obtain an abatement of their claims. The parties meet on equal ground, and the creditor may either assent to the debtor's proposition, or take his chance by suit. But if the debtor could, by an assignment, place his property beyond the reach of his creditors by suit, and be at the same time permitted to compromise with them, or offer terms of compromise, the odds would be fearfully in his favor." Surely, in the case before us, the odds would be greatly in favor of the assignee, who is in a position to deny the standing of a creditor, and who may drive the creditor to a suit merely to establish the fact that he is a creditor. In view of the death of the assignor in this case, and inasmuch as our law requires claims against the estates of deceased persons to be presented to the administrator for allowance, &c., the assignment in this case could only be upheld because the deceased, in his lifetime, had settled, by the instrument of assignment, the rights of his creditors, and recognized their standing as creditors. As this has not been done in the assignment before us, we are of opinion that it is of no validity against the plaintiffs who have not assented to it and to whatever action the assignee may have taken under it. The judgment of the District Court is therefore

reversed—the suit of the assignee, J. W. Mosely, as intervenor, is dismissed, and the cause remanded for further proceedings as between the plaintiffs and the administrator of the estate of Jones.

Reversed and remanded.