WALTER H. COOTS v. MARVIN H. CHAMBERLAIN, ASSIGNEE.

*Assignment for the benefit of creditors—Schedule—Conveyance in payment of bona fide debts—Charge to the jury.*

The validity of a debtor's assignment cannot be made to depend on the assignee's subsequent testimony as to whether he would have taken it or not if he had known when he took it that the assignor had conveyed a tract of land the day before he made it.

An assignment for the benefit of creditors, if in terms that would clearly transfer the title to all the debtor's property, is not invalid for want of a schedule.

A conveyance of real estate does not invalidate an assignment made the next day, if it was a complete and independent transaction, done without contemplating an assignment; and it is for the jury to determine whether it was or not.

A conveyance in satisfaction of a *bona fide* debt to some relation of the debtor does not invalidate a subsequent assignment by him for the benefit of creditors, even though there had been long delay in meeting the debt; the question whether there is a debt based upon an actual consideration and recognized by the parties, is one of fact.

A charge must be considered together, and if correct as a whole, the judgment will be sustained.

Error to Superior Court of Detroit. Submitted October 23. Decided October 31.

39 MICH.—70.

TROVER.  Defendant brings error.

*George W. Bates* and *Henry M. Cheever* for plaintiff in
error.   If the schedules of property assigned for the
benefit of creditors tend to limit the description of the
property conveyed, they must be referred to in deciding
what passes; and if not attached till after the execution
of the assignment, no property mentioned in them passes
to the assignee, and the assignment is frauduent and
void as to subsequent creditors levying attachments
before the schedules were annexed, Burrill on Assign-
ments [3d ed.], 169; *Moir v. Brown*, 14 Barb., 39;
*Spring v. Strauss*, 3 Bosw., 607; *Kircheis v. Schloss*, 49
How. Pr., 284; *Mims v. Armstrong*, 31 Md., 87; *Wood
v. Rowcliffe*, 5 Eng. L. & E., 471; *Wilkes v. Ferris*, 5
Johns., 335; *Driscoll v. Fiske*, 21 Pick., 503; *Price v.
Haynes*, 37 Mich., 489; *Rundlett v. Dole*, 10 N. H., 462;
*Clap v. Smith*, 16 Pick., 247; contra, *Platt v. Lott*, 17
N. Y., 478; *Nye v. Van Husan*, 6 Mich., 345; if property
is withheld from an assignment with fraudulent intent,
it avoids the assignment, *Wilson v. Forsyth*, 24 Barb.,
120; *Livermore v. Northrup*, 44 N. Y., 111; *Smith v.
Mitchell*, 12 Mich., 191; *Loeschick v. Baldwin*, 38 N. Y.,
326; and if property is fraudulently conveyed before
making the assignment, the assignee cannot reach it,
*Leach v. Kelsey*, 7 Barb., 470; *Brownell v. Curtis*, 10
Paige, 210; *Browning v. Hart*, 6 Barb., 91; *Vandyke
v. Christ*, 7 W. & S., 373; *Jones v. Yates*, 9 B. & C.,
532; *Van Heusen v. Radcliff*, 17 N. Y., 580; *Estabrook
v. Messersmith*, 18 Wis., 545.

*Atkinson & Atkinson* for defendant in error.   An
assignment vests the property at delivery whether the
schedules are perfected or not, *Hollister v. Loud*, 2 Mich.,
310; *Turner v. Jaycox*, 40 N. Y., 472.

MARSTON, J.   The questions raised in this case grow
out of and relate to the validity of a general assignment
made by Francis J. Chamberlain, February 12th, 1878,

for the benefit of his creditors, to Marvin H. Chamberlain, the plaintiff in this action.

The assignee upon the same day the assignment was made, accepted the trust and took possession of a stock of groceries thereunder.   On the following day plaintiff in error, as sheriff, by virtue of a writ of attachment, wherein Francis J. Chamberlain, the assignor, was defendant, levied upon this stock.

Although a schedule was referred to in the assignment for a more full and particular enumeration of the property assigned, none was attached thereto until after the levy, or until the 15th of February, and the assignment, although signed, witnessed and delivered and accepted on the 12th of February, was not acknowledged until the 18th of February.

It appeared upon the trial that many years previous to the time of the assignment, the assignor was the owner of certain real estate in the county of St. Joseph; that the title to a part of this property, on account of certain litigation, passed out of the assignor; that the father of his wife advanced to her sufficient money to purchase back these lands, which was done and the conveyance thereto taken in her name, where it remained until shortly before her death when she conveyed the property to her husband, with an oral understanding that the conveyance was for the benefit of their daughter, then a minor.

This real estate remained in the name of Francis J. Chamberlain and was used and treated by him in all respects as his own; he borrowed money and gave a mortgage thereon to secure payment of the same.

On February 11th, the day previous to the assignment, he deeded this and certain other property, part of the same farm, subject to the encumbrances thereon, to his brother Alvinzie H. Chamberlain.   The only consideration for this conveyance, was one made by Alvinzie H. to the wife of Frances J., of a lot in the city of Detroit, with the understanding that when the daughter

of his deceased wife came of age, this lot should be conveyed to her, as a fulfillment of his agreement made with her mother in reference to the farm property at the time it was conveyed to him. The farm conveyed to Alvinzie H. on February 11th was worth $5240, subject to a mortgage thereon of $2000. The lot in Detroit conveyed to his wife was valued at $2000. The stock of groceries and fixtures which passed under the assignment were valued at nearly $2400. That his liabilities were from $2000 to $4000, about one-half of which was past due.

From this statement of facts it is supposed the legal questions raised will be understood.

The assignee when examined as a witness was asked: "Would you have taken it [the assignment] if you had known that he [the assignor] had given a deed of this farm the day before, as he did?"

This question was objected to and excluded. It was wholly immaterial what the witness would have done under the circumstances. The validity of the assignment could not be made to depend upon what the assignee may afterwards testify he might or would have done, had facts, not then made known to him, been brought to his attention. If he in good faith accepted the trust, for the benefit of the creditors, no opinion or conclusion which he might afterwards form or come to, could in any way affect the validity of the assignment made.

It is next said that the court erred in admitting the assignment in evidence, and in charging the jury that it was sufficient upon its face to transfer the property in question to the plaintiff, provided it was made for the purpose intended by it.

The particular objection urged was that by the terms of the assignment it purported to have attached to it for its completeness and as a part of it, a schedule defining particularly and distinctly the property conveyed, while no such schedule was attached until after the levy.

The language of the assignment in this case was not only broad and general, but it was clear and distinct, and would have passed and transferred the title to all and singular the property of the assignor, whether a schedule had or had not been attached thereto. The object of referring to a schedule in this case, was as expressed, for a more full and particular description of the property, not by way of limitation, but to enable the assignee to ascertain the more readily, and take charge of the property owned by the assignor, and which would pass under the assignment whether enumerated in the schedule or not. The clear intention of the parties was, as appears by the instrument, that the title and right of possession should pass at once, and that such right and title should not be subject to, or be limited or controlled in any way by the schedule or any schedule that might thereafter be attached thereto. The assignment was complete in and of itself, and an entire omission to attach any schedule thereto afterwards could in no way have affected its validity or the title to the property which had already passed to the assignee thereunder. Such is the well settled law in this State. *Nye v. Van Husan*, 6 Mich., 345; *Hollister v. Loud*, 2 Mich., 310.

There was no error therefore in the court's admitting this instrument in evidence, and in charging the jury that in so far as appeared, it was valid.

The next alleged errors relate to the effect upon this assignment, of the conveyance of the real estate in St. Joseph county on February 11th.

Upon this branch of the case the charge of the court was remarkably clear and full. The jury were charged:

"If that transfer, which was made, whatever was its purpose, was an independent act upon his own part, based upon an independent idea,—was completed and at the time had no connection in his mind with any other acts, then it would have no effect upon an assignment. But if that assignment and the transfer were made part and parcel of the same transaction, for the purpose

39 MICH.—72.

of cheating and defrauding creditors, then it would affect the assignment, and it will be for the jury to say whether upon the testimony contained in this case, the facts are such as fairly and warrantably lead them to infer that the whole transaction taken together was for this purpose.   *   *   *   If so, then the jury would be authorized to say that the assignment was a fraudulent and void assignment."

There can be no doubt as to the correctness of the proposition here laid down, that if the conveyance of the farm on February 11th, was an independent act and completed, and that when done and completed had no connection in his mind with what followed or was to follow on the next day, it would be valid and would not affect the validity of the assignment afterwards made. It is principally on account of the shortness of time intervening between these two transactions that the doubt arises as to their being separate and independent. Undoubtedly this fact would have much greater weight with a jury than though a considerable time had elapsed. The court, however, could not as matter of law hold that the transactions were one and the same, and that therefore the assignment was void. The difficulty must arise as to where the proper dividing line should be drawn, by which cases within the boundaries thereof should be held to form part of one transaction, completed afterwards, while those just beyond formed no part thereof. The only true and correct course is to submit all such questions under proper instructions to the jury,—who may, not looking at the question of time alone, but by giving due weight to that and all the surrounding facts and circumstances in the case, determine just what part it did play, and the effect thereof upon the principal transaction.

The court farther charged the jury, that if it was the intention of Mr. Chamberlain in making this conveyance, to carry out the agreement made with his deceased wife, then there was nothing in the transaction of which the creditors could complain, while on the other hand,

if he did not, and does not intend to carry out such agreement, but intended to keep the property as his own, and what was done was merely to place it beyond the reach of creditors, with the understanding or intent upon his part of getting it back at some future time, then that the transaction would be fraudulent.

The only part of this charge that is complained of is that portion which permitted the jury to find the conveyance not void as to creditors, if the object and intent thereof was to carry out the agreement made with his deceased wife.

That there was evidence tending to show such an agreement is not disputed. Mr. Chamberlain so testified. The court could not say that such testimony was wholly unworthy of belief, and therefore withdraw it from the consideration of the jury. There may be and doubtless are cases where parties, suspecting or believing they will be unable to meet their just liabilities as they become due, may convey a portion of their property to some member of their family or relative claiming some old obligation or agreement as the consideration therefor. All such cases will bear close scrutiny; the manner in which the debt or obligation was created, the amount thereof, the length of time it was permitted to run unrecognized, the relation existing between the parties, these and many other circumstances may well be considered, and in the light thereof the jury may find that the consideration or agreement actually existed—was a *bona fide* one—or that it was merely one gotten up for the occasion without any sufficient foundation in fact therefor. In all such cases the existence or non-existence of such a consideration or agreement in the light of all the surrounding circumstances is one of fact. If the case is being tried before a jury it must be submitted to them as such under proper instructions; if being tried by the court without a jury, the court will in like manner determine the question as one of fact. In either case, where it is ascertained that the consideration or

agreement actually existed,—that it was one proper to have been made and carried out by the parties at the time,—then the mere fact that there has apparently been unreasonable delay in the execution thereof should not prevent justice being done. So long as the obligation, although perhaps not a legal one, remains in force and is recognized by the parties, an effort made in good faith to complete the same will be upheld. Tardiness alone in the completion of a lawful undertaking, or in the payment of an obligation, even although it is one the law would not enforce, should not *per se* render the act illegal.

There certainly was nothing in the casual remark made by the court as to a homestead right, which could have had any bearing or influence in the case, and the same may be said of certain other detached portions of the charge which are complained of. We must look at the charge as a whole, and if all that is said upon any particular branch of the case is correct, even although sentences therein, if examined by themselves, would not be, the judgment will be permitted to stand.

The jury under the charge as given must have found the assignment valid and not fraudulent and void as to creditors, and the effect of such a finding is to render immaterial some of the questions raised as to the validity of the levy.

From a careful examination of the record we discover no error.

The judgment must be affirmed with costs.

The other Justices concurred.